Filed 7/30/13  P. v. Martinez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　v.<br><br>DANIEL ANGEL MARTINEZ,<br><br>　　Defendant and Appellant. | G047280<br><br>(Super. Ct. No. 12CF0204)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Affirmed.

Gambale & Gambale and Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

*　　　　*　　　　*

Daniel Angel Martinez was convicted of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)[1]) for pointing a .22 caliber semiautomatic handgun at a group of women in a fast food parking lot near central Santa Ana. He was sentenced to a low term of three years, plus an extra three years for having personally used a firearm in the commission of an assault (§ 12022.5, subd. (a)), then placed on probation.[2] He appeals his assault conviction on the theory the evidence supporting it was too speculative. We disagree; the evidence was substantial.

FACTS

Almost all the evidence to support the assault conviction came from officer Ceasar Flores, a Santa Ana Police Department detective who was witness to the events of that early morning. Flores was by himself, driving a marked black and white police car which at the time had no overhead blue and white lights. (The police lights were in the passenger compartment, hence the car is referred to as a "slick top.") Flores was "cruising around" when he noticed a group of people in a McDonald's parking lot: two men and three or four women. He drove into the lot, turned his headlights off, and lowered his window. He heard loud voices. While he couldn't make out the words, he could tell "they were engaged in an argument."

The two men would later be identified as appellant Daniel Martinez and Jesus Marincoss.[3] In his testimony at trial, Flores was clear that Marincoss was "not communicating with any of the group" but rather "stayed back watching." Marincoss

---

[1] All statutory references are to the Penal Code.
[2] He was also convicted of carrying a concealed weapon inside a vehicle (§ 25400, subd. (a)(1)), which is a misdemeanor, but imposition of that sentence was stayed pursuant to section 654.
[3] While Marincoss and Martinez were tried jointly, only Martinez appeals.

was standing away from Martinez, who was "contacting the group." It looked to Flores as if Marincoss was simply the lookout.[4]

Flores explained at trial – confirming Marincoss's lookout assignment – that Marincoss soon noticed Flores' police car, said something to Martinez, and Martinez then also turned his head in the car's direction. The two men quickly turned and walked to a four-door white Honda Accord. Marincoss got in the driver's seat and Martinez the left rear passenger seat.

Flores was about to drive after them when one of the women in the group came running toward him, "waving her arms and yelling." She told Flores, "They have a gun, they pointed a gun at me." The woman added, "They're in the white car."

Flores accelerated to about 30 miles an hour in the parking lot, and was able to follow the Accord as it left the lot and traveled through the adjacent residential neighborhood. As Flores followed the Accord he noticed that Martinez had climbed into the passenger seat on the driver's side, and threw a black metallic object out the window. The object, later recovered, turned out to be a loaded .22 caliber semiautomatic handgun.

Backup soon arrived, and Martinez and Marincoss were arrested. The woman who told Flores about the pointing of the gun, however, could not be found.

DISCUSSION

Martinez focuses on the testimony of the woman who came up running to Flores just before he started following Marincoss and Martinez, emphasizing that the

---

4       Because of its importance to this appeal as framed by Martinez, we quote this excerpt from Flores' testimony on the respective roles of the two men as told by Flores on cross-examination, precipitated by a question asking what Marincoss was doing that was "different from a person who was simply standing around watching an argument."

Flores answered: "In my experience, sir, his behavior was consistent with that of an individual who's behaving as a lookout."

Flores was then asked, "What was his behavior that made you think he was a lookout" and the officer elaborated: "He was standing away from the individual contacting the group. Generally, in my experience, while conducting surveillances, that is common behavior for an individual acting in that role. Whenever there is a crime being committed, individuals speak to each other and assign a role such as an individual contacting a victim and an individual that's [sic] role is that of simply a lookout."

3

statement, "They have a gun.  They pointed a gun at me" does not say, in so many words, that *Martinez* pointed a loaded firearm at her in a threatening manner.  Martinez asserts that the prosecutor presented no evidence as to how the gun was displayed or why, or who displayed it, or how it was displayed.  At root, Martinez' appeal goes to the question of the quantum of evidence necessary to sustain a conviction for assault with a firearm under section 245, subdivision (b).  The applicable authorities, however, do not support him.

A consistent line of California case law holds it is enough that a defendant *point* a loaded firearm at a potential victim under circumstances which show the pointing was done in a threatening manner.  (See *People v. Raviart* (2001) 93 Cal.App.4th 258, 265, 267 [sustaining conviction of assault with a deadly weapon where evidence merely showed that as police officer "came round the corner, he saw defendant pointing a chrome handgun directly at him"]; *People v. Schwartz* (1992) 2 Cal.App.4th 1319, 1325-1326 [sustaining conviction of assault with a firearm where defendant "pointed the gun at several employees" and ammunition for gun was later found in defendant's home]; *People v. Thompson* (1949) 93 Cal.App.2d 780, 782 [evidence sufficient where defendant pointed gun toward two sheriff's deputies even though he was aiming between them and pointing downward, because weapon was in "position to be used instantly"].)

In fact, a couple of published opinions have gone so far as to say it is enough that a defendant merely point a gun at a potential victim, period, and have not added "threatening manner" qualifiers.  (See *Raviart, supra*, 93 Cal.App.4th at p. 263 ["Assault with a deadly weapon can be committed by pointing a gun at another person."]; *People v. Laya* (1954) 123 Cal.App.2d 7, 16 ["The mere pointing of a gun at a victim constitutes an assault with a deadly weapon, whether or not it is fired at all."]; but cf. *People v. Hartsch* (2010) 49 Cal.4th 472, 507-508 [finding it sufficient that defendant pointed gun "in a menacing manner" under "threatening circumstances"].)

In the case before us, we need not rely on the authority indicating the minimalist pointing of a gun is sufficient, because there is more. Here, substantial evidence shows (1) it was only Martinez, and not Marincoss, who pointed the black metallic .22 semiautomatic firearm at the unidentified woman in the McDonald's parking lot, *and* (2) the pointing was indeed done in a menacing manner under threatening circumstances. First, officer Flores testified that Marincoss "stayed back watching" and did not communicate with any of the group. Rather, Marincoss played the role of lookout for Martinez, who was doing the talking. From this evidence a jury could readily conclude that it was Martinez, not Marincoss, who pointed the gun – especially since it was Martinez who tossed the gun from the car. He definitely had it then.

And second, the totality of the circumstances under which Flores received the information from the unidentified woman would allow a jury to reasonably infer Martinez had pointed the .22 semiautomatic at her in a threatening manner. When Flores happened upon the scene an argument was ongoing. But then Martinez and Marincoss saw a marked police car and immediately retreated to the Accord. Only at that point did unidentified woman run to officer Flores' marked car, obviously in a high state of agitation – the first words out of her mouth concerning a firearm just pointed at her. A jury could readily conclude such events are most naturally explained by a nefarious purpose on the part of Marincoss and Martinez – Martinez in particular – which had been interrupted mid-transaction. That is, not only was there some pointing of a firearm, but the pointing was done in the context of argument, and was sufficiently threatening to prompt the person pointed at to be sufficiently worried that she felt it necessary to frantically flag down the nearest police officer.

Appellant is correct there are other explanations for some of the facts to which we refer. But our job is not to decide the case; our job is to determine whether there was substantial evidence upon which a jury could reasonably have come to the

conclusion Appellant was guilty.  After examining the record, we have come to the conclusion there most definitely was.

DISPOSITION

The judgment is affirmed.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.